COMMON SCHOOL DISTRICT NO. 85 v. COUNTY
OF RENVILLE AND ANOTHER.

THEODORE KRAMER v. COUNTY OF RENVILLE AND
ANOTHER.[1]

December 27, 1918.

No. 21,080.

**Consolidation of school districts — evidence admissible.**

1. On appeal in proceedings under G. S. 1913, § 2677, for the annexation of additional territory to a school district, or the consolidation of existing districts, any evidence having a reasonable tendency to lay before the court the conditions and situation of the existing districts, and the results likely to follow a consolidation or annexation, is competent and should be received. The rules of evidence in ordinary judicial procedure do not necessarily control.

**Same — findings not sustained by evidence.**

2. The findings of the trial court in this proceeding, that an order of the board of county commissioners annexing the territory of a rural school district to a district located within a village containing less than 7,000 inhabitants, as provided for by the statute above cited, was oppressive and unjust, *held* not sustained by the evidence.

**Statute — construction of act by the courts.**

3. A statute may seem unwise, it may seem unjust, it may seem unreasonable in its operation upon the rights of the citizen, but that view of the law, in the absence of some conflict with the Constitution, cannot be made the basis of a refusal by the courts to enforce it.

From an order of the board of county commissioners of Renville county, granting a petition for the enlargement of Independent School District No. 79, School District No. 85 in that county, by its duly elected school board, appealed to the district court of that county, upon the ground that the action of the county commissioners was against the best interests of the territory affected, and that it was not conducive to the good of the inhabitants of School District No. 85, and upon the

[1]Reported in 170 N. W. 216.

further ground that the law under which the proceeding was had was unconstitutional. The appeal was heard by Qvale, J., who made findings and reversed the order of the county board as arbitrary, oppressive and unjust. From an order denying their motion for a new trial, the county of Renville and J. L. Johnson, as county auditor, appealed. Reversed.

*J. M. Freeman,* for appellants.

*Murray & Baker,* for respondent.

BROWN, C. J.

This proceeding was brought under the provisions of section 2677, G. S. 1913, for the enlargement of School District number 79 of Renville county, by attaching thereto the territory comprising the adjoining district number 85. The proceedings were in all things regular, and after due hearing before the board of county commissioners the prayer of the petition was granted. An appeal was taken to the district court, as authorized by statute, where, after trial without a jury, findings were made to the effect that the decision of the county board was arbitrary, oppressive and unjust, and the order granting the prayer of the petition was in all things reversed and set aside. Petitioners appealed to this court from an order denying a new trial.

The principal question presented by the record is whether the conclusions of the trial court, within the rule guiding and controlling the judicial review of such proceedings, are sustained by the evidence. One or two of the assignments of error challenge certain rulings of the court in the admission of evidence, but they present no question of special importance. We pass them with the remark that in proceedings of this kind the court should receive all evidence which tends in some degree to lay before the court the relative situation in respect to the proposed change and all facts having a pertinent bearing on the questions involved. No technical rules should be applied. The rules of evidence in ordinary judicial procedure do not necessarily control. With this statement we come directly to the main issue in the case.

The matter of organizing school districts, and of consolidating or adding to or taking from the territory of existing districts is purely of legislative judgment and discretion. And, though a review by the courts of the decision and determination of the legislative tribunal is

provided for by statute, we have uniformly applied the rule that the court will disturb such determination only when found to have been based on erroneous theory of the law, or when from the evidence it clearly and manifestly appears that the decision was arbitrary, unreasonable and unjust, or against the best interests of the public. The rule is stated in different language in numerous decisions, but all to the effect substantially as just stated. Practically all of which will be found cited in Brazil v. County of Sibley, 139 Minn. 458, 166 N. W. 1077, and no further reference need be made either to the rule or the decided cases.

This proceeding is founded on the provisions of the second and third paragraphs of section 2677, G. S. 1913, wherein it is provided that territory contiguous to a school district, having within its boundaries an incorporated city or village of less than 7,000 population, may be attached to such school district by the board of county commissioners on a petition of a majority of the legal voters of that district. In other words, a school district so located may under the statute, on a petition of a majority of its own legal voters, secure the coveted territory without regard to the wishes of those residing therein.

There is no dispute about the facts, and the case is brought within the statute. School District number 79 includes within its boundaries the village of Olivia, an incorporated village of less than 7,000 inhabitants. The territory sought to have annexed thereto lies contiguous to the village district, and comprises all the territory of the adjoining School District number 85. That is the ordinary rural school district, and its territory is composed of six and one-half sections of land. The taxable value of the property therein is approximately $100,000. The number of pupils receiving state aid for the year 1916 was 11. Two families of the district reside within one and one-half miles from the school house, and that is the greatest distance any child has to travel in going to and from school. Heretofore school in the district has been maintained for the period of eight months yearly, teaching the subjects usually taught in such districts. The school house was destroyed by fire in February, 1917, since which time the children have attended school in the adjoining districts. Immediately following the destruction of the school building, preparations were made for the construction of a new one, and bonds in the sum of $3,500 were voted for that pur-

pose.  Proceedings in that behalf however were interrupted by this proceeding, though it was the intention of the officers of the district with the funds so raised to construct a modern school building.

The Olivia district has two modern school buildings, and therein is conducted the standard high school, affording all pupils educational advantages not found in the rural school.  The children of one family in the territory to be attached reside about five miles from the village, others at distances ranging from one to four miles.  It is proposed and intended by the Olivia district, if the territory be attached, to form a consolidated district and to daily convey the children to and from their homes by means of a suitable conveyance, in harmony with plans adopted and successfully carried out in districts of that kind.  The evidence shows without much of any controversy that methods of that kind in other consolidated districts have as a rule been a success.  There are some poor roads in the territory of district number 85, which, at certain seasons of the year as the trial court found, are for a time impassable.  The rate of taxation if the petition be granted will be to some extent raised in that district, and the residents thereof are unanimously opposed to the proposed consolidation.  On the other hand, the change was expressly approved by a representative of the educational department of the state, and of the county superintendent of Renville county, as in harmony with the policy of the state to consolidate rural school districts whenever found for the best interest of all concerned, to the end that the rural boy and girl may receive the same, or substantially the same, educational advantages as are given to those residing in the cities and villages.

Upon the facts stated we are unable to concur in the conclusion of the learned trial court that the order of the county board in annexing the territory was either arbitrary, oppressive or unjust.  We find in the increased rate of taxation (several mills), in the occasional bad roads or stormy weather, in the unanimous opposition of the inhabitants of the affected territory, no sufficient reason for declaring as a matter of law that the annexation of the territory was an abuse of the legislative discretion vested by the state in the county board.  The annexation of rural territory to a district within some city or village necessarily will increase the rate of taxation as to the territory thus brought in, and that

fact was known to the legislature when the statute was enacted. The legislature must also have had in mind the fact that such annexations or consolidations might and in all probability would meet with opposition from those residing in the outlying territory, and, to avoid complications in that respect, the petition of the legal voters of the village district was alone made a sufficient reason for entertaining the proceedings. Bad roads and bad weather are ever present, and should not be made the basis or reason for rejecting efforts to extend to the rural population improved educational advantages. Such is the design and purpose of the statute, and the facts bring the case fairly within its intended scope and operation.

Something was said on the argument upon the merits of the statute, and the suggestion made that a law that will permit the annexation of the territory of one school district at the behest of another is itself unjust, and obnoxious to the principles of our democratic form of government. The wisdom or propriety of the statute is not a judicial question, but one solely for the legislature. A statute may seem unwise, it may seem unjust, it may seem unreasonable in its operation upon the rights of the citizen, but that view of the law, in the absence of some conflict with the Constitution, cannot be made the basis of a refusal by the courts to enforce it. If it be deemed thus obnoxious the complaint should be addressed to the legislature. And though this statute is a distinct departure from the earlier policy of the state to extend to the voters of school districts a voice in all the affairs thereof, the departure was in furtherance of the educational interests of the state, a legitimate legislative policy, and clearly within and not opposed to nor in conflict with the constitutional rights of the citizen.

We therefore conclude that on the facts as they appear in the record before us the order of the county board should be sustained, and the order denying a new trial is accordingly reversed.