IN RE ORDER OF GRACE McALPINE, COUNTY
SUPERINTENDENT OF SCHOOLS OF
COUNTY OF WASHINGTON.
EARL WRIGHT AND OTHERS v. LINCOLN W. NELSON
AND OTHERS.

81 N. W. (2d) 82.

February 15, 1957—No. 36,990.

*Neumeier, Rheinberger & Eckberg, McMenomy & Hertogs,* and *Harry H. Peterson,* for appellants.

*John E. Harrigan,* for respondents.

FRANK T. GALLAGHER, JUDGE.

Appeal from a judgment of the District Court of Washington County dismissing an appeal from the order of the county superintendent of schools of Washington County consolidating Washington County Common School Districts Nos. 25, 65, and a part of 45, with Washington County Independent Consolidated School District No. 102.

The territory included in district No. 102 is composed of most of the western half of the southern part of Washington County. This area includes the village of St. Paul Park, the village of Newport, and the unincorporated settlement of Cottage Grove. The eastern portion of the southern part of Washington County has five common school districts—not involved in this proceeding—occupy-

ing the extreme southern part of the eastern portion. Immediately north of those five districts are districts Nos. 25, 65, and 45, involved in these proceedings. The city of Hastings is located in the northern part of Dakota County, just south of the five districts not included in these proceedings. Independent School District No. 26, located in the city of Hastings, is not a consolidated district but accepts high school and grade school students from the surrounding area, including Washington County, on a tuition basis.

By way of a brief background, several attempts have been made in the past to solve the reorganization problem with respect to the unreorganized districts involved. The first attempt was a reorganization election held in December, 1951, involving the Hastings district, certain districts in rural Dakota and Goodhue Counties, and the above-referred-to-unreorganized districts in Washington County. That election failed. Several efforts were made thereafter for a partial solution by way of a proposal to add portions of these unreorganized districts in Washington County to St. Paul Park, which efforts also failed. Finally the proposal here involved was submitted and was approved by the commissioner of education, the voters of districts No. 25, 65, and part of 45, and the school board of district No. 102, with which latter district consolidation was effected.

At the time of this proceeding, district No. 102 maintained a two-room grade school in Cottage Grove, a grade school in Newport, and a grade and high school in St. Paul Park. Hastings has a grade school and a new $1,250,000 high school. In past years high school students and some grade school students from the southeastern part of Washington County have attended public or parochial schools in Hastings, Stillwater, St. Paul, and St. Paul Park, although more attended Hastings than any other area. The people of this area also traded in these cities and villages, with probably a greater portion of the trading being done in Cottage Grove and Hastings. Church attendance encompasses the same cities and villages, with the greater attendance at Cottage Grove and Hastings.

From the southern boundary of the territory concerned in this proceeding, namely, the southern boundary of district No. 45, the

airline distance—about six miles—is approximately equal between Hastings and St. Paul Park. As one goes farther north into districts Nos. 45, 65, and 25, the distance to St. Paul Park becomes shorter than that to Hastings. There are paved or blacktop highways into both St. Paul Park and Hastings; however, travel from the area concerned here to St. Paul Park would involve more use of gravel roads than would travel to Hastings.

At the time of this proceeding, districts Nos. 25 and 45 had closed their grade schools. Most of the students in district No. 45 and the high school students in district No. 65, where the grade school was still open, are attending school in Hastings, where school buses have served that area for several years.

The legal issues which we regard as pertinent to this appeal are: (1) Whether the order of consolidation issued by the Washington County superintendent of schools, based on the consolidation election, was arbitrary and unreasonable in disregard of the best interests of the territory affected; and (2) whether the order established a consolidation which had been effected by fradulent and arbitrary means.

The rule is well settled that the trial court will only interfere with an action taken with respect to proceedings on consolidation when it is clearly shown that the action taken was arbitrary, oppressive, fraudulent, or was taken upon an erroneous theory of law, or in unreasonable disregard of the best interests of the territory affected, so as to constitute an abuse of the discretion vested in the county agency. In re Certain School Dists. Freeborn County, 246 Minn. 96, 74 N. W. (2d) 410; In re Appeal of Consolidated School Dist. No. 16, 179 Minn. 445, 229 N. W. 585. This court therefore must decide whether the evidence reasonably supports the decision of the trial court. In re Certain School Dists. Freeborn County, *supra.*

The appellants contended that the consolidation was in disregard of the best interests of the territory affected for the following reasons: That consolidation would involve acceptance of an inferior St. Paul Park, Newport, and Cottage Grove school system rather than a superior Hastings school system; that the economical position

of district No. 102 and its assessed valuation for tax purposes are not as favorable as the Hastings area; that better highways connect the disputed area to Hastings and do not cross railroad tracks as do roads leading to St. Paul Park and Newport; and that the remainder of district No. 45 must support its common school with, roughly, one-third of its tax base having been taken away.

We have carefully considered appellants' reasons in support of their contention that the order of consolidation was arbitrary and in unreasonable disregard of the best interests of the territory affected. After an examination of the record and exhibits we cannot say as a matter of law, under the facts and circumstances here, that the consolidation will necessarily involve the acceptance of an inferior school system as a result of consolidation with St. Paul Park, nor that differences in assessed valuations for tax purposes, or in highways available, establish an undeniable preference for Hastings. Neither can we say that the church, school, and trade activities of this area are so strongly in favor of Hastings as to deny consolidation with St. Paul Park.

Further, it is not foreseeable that the remainder of district No. 45 will be forced to operate their common school minus one-third of their tax base. Their school is now closed, and considering the expressed preference of those residents in the remainder of district No. 45 to join the Hastings area, together with the approval of the Hastings school board to take in that part of district No. 45 as shown by the approval of the Hastings plat, it is reasonable to anticipate that the area will not long remain an independent district but will be consolidated with Hastings.

Also, this is a situation where, after other consolidation efforts had failed, the majority of the voters in districts Nos. 25, 65, and part of 45, voted to consolidate with district No. 102 after the proposal had been submitted to and approved by the commissioner of education. The situation here is not too unusual. Often in the case of school reorganization and consolidation matters there is opposition, and no election seems to necessarily satisfy all con-

cerned. For reasons stated we cannot say in the instant case that the best interests of the territory involved are disregarded.

■ Appellants argue that the consolidation was effected by fraudulent and arbitrary means for the following reasons: That the split of district No. 45 took property of some owners into the consolidation, for tax purposes, but left their homes outside, thus eliminating their anticonsolidation votes; that the superintendent of St. Paul Park schools promised a new school in Cottage Grove to entice votes, whereas such a promise could not be fulfilled inasmuch as district No. 102 is within $55,000 of its maximum allowable bonded debt; and that the state Department of Education did not consider the Hastings plat before it approved the St. Paul Park plat when it had knowledge that both plats covered part of the same area.

The lines drawn splitting district No. 45, although taking some property while eliminating the owners' homes, are straight lines, following quarter-section or section lines except for a jog necessary to leave the school property of district No. 45 with the remainder of the district. The property taken is in proportion to the number of children taken and does not take a disproportionate amount in relation to the number of students as was the case in In re Certain School Dists. Freeborn County, *supra.* Considering all of the evidence before us and the efforts previously made to solve this problem, we cannot say as a matter of law that the line as drawn is arbitrary or unreasonable in view of its approval by the Department of Education and the voters of the territory here affected. We cannot say from the evidence that the controversial statements of the St. Paul Park superintendent of schools, apparently authorized by the school board of district No. 102, presenting a proposal of district No. 102 to build a new elementary school at Cottage Grove operated or was intended to operate as a bribe, in effect, as opposed to a good-faith proposal to build there if circumstances justified it. Nor can we say that the alleged promise is incapable of fulfillment because the record does not show that such construction is financially impossible. In regard to the approval of the St. Paul Park plat by the commissioner of education, the record discloses that the commissioner

approved the St. Paul Park plat, which was submitted about a month prior to the Hastings plat, after following the customary procedure established in that department and after a full consideration had been given to the problem.

We have carefully examined the record here as we realize that our decision affects the present and future rights of many people involved and we cannot say that the school authorities exercised their powers with respect to consolidation in such an arbitrary, fraudulent, or unreasonable manner as to constitute an abuse of discretion which would justify a reversal of the judgment from which this appeal was taken.

Affirmed.