## EDWARD YANISH *vs.* CITY OF ST. PAUL.

Submitted on briefs June 22, 1892.   Decided July 15, 1892.

### Two Grades on Same Street—Retaining Wall.

A city council having general authority to establish the grades of streets may, under peculiar circumstances, fix the grade for one side of a street on a materially different level or plane from that of the other side; and if this renders it incidentally necessary to construct a retaining wall along the center of the street, to support the earth on the higher grade, that may be done.   Such an exercise of public rights is not an infringement of the rights of an adjacent proprietor, whose property may be injured thereby.

Appeal by the plaintiff, Edward Yanish, from an order of the District Court of Ramsey County, *Brill*, J., made January 25, 1892, sustaining a demurrer to his complaint.

The plaintiff, Edward Yanish, is the owner of eight lots situated on the north side of Curtice street, between Woodbury street and Brown avenue in West St. Paul.   Curtice street is a public highway sixty feet in width, and runs in an easterly and westerly direction.   In 1891, the City of St. Paul graded Curtice street between South Robert street on the west, and Concord street on the east, a distance of about eleven blocks, according to the grades established by the Common Council and the city engineer.   This grade descends at a gentle incline from South Robert street to Concord street, conforming substantially to the general surface of the country in the neighborhood.   The natural surface of the earth where the street passes plaintiff's lots, and for some distance therefrom east and west, is higher on the south side of the street than on the north. The City established two grades of the street and two passage ways at this point, one conforming to the level of the lots on the south side, and the other conforming to the level of the lots on the north side of the street.   The south grade in its highest point is some seventeen and a half feet higher than the north grade.   From this point the two passageways are graduated in either direction so that they come together at some distance from plaintiff's lots.   For the

purpose of retaining the south grade at its established height, the City built a stone wall along the center of the street. This wall varied in height from five to seventeen and a half feet in front of plaintiff's lots, and encroached upon the north half of the street about four and one-half feet. The City Council of St. Paul has general authority to establish the grade of streets in that city under the direction of the city engineer. Sp. Laws 1887, ch. 7, tit. 3, § 1.

This action was brought to recover the damages to plaintiff's lots resulting from this mode of improving the street; the complaint setting forth the facts of the grading as above stated, and the building of the retaining wall, and claiming that the City should have graded the street at a uniform level for the entire width. The defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was sustained, and plaintiff appealed.

*O. E. Holman,* for appellant.

The charter of the City of St. Paul does not authorize two grades to be established on the same street. The power is limited to the establishment of the grade of the street; that is, a single grade. Sp. Laws 1887, ch. 7, tit. 3, § 1. Had the Legislature intended to give the power to establish two or more grades on the same street, it could have easily provided therefor by the addition of a few words. Any doubt or ambiguity arising out of the terms used by the legislature must be resolved in favor of the public. 15 Am. & Eng. Ency. of Law, 1041. The Legislature cannot authorize the establishment of two grades on the same street unless compensation to the injured property owner be provided for, because the easements of access across the street to its full width and of light and air furnished by the full width, are property rights in the abutting owner that cannot be taken away without compensation. *Lamm* v. *Chicago, St. P., M. & O. Ry. Co.,* 45 Minn. 71; State Const. Art. 1, § 13; *Schurmeier* v. *St. Paul & Pac. R. Co.,* 10 Minn. 82, (Gil. 59;) *Adams* v. *Chicago, B. & N. R. Co.,* 39 Minn. 286. In any event the city had no power to construct the retaining wall on Curtice street in front of plaintiff's property, encroaching four and one-half feet on the north half of the

street.    This is a permanent obstruction to travel and a nuisance *per se*.    Elliott, Roads, 161; Lewis, Em. Dom. § 114.

*Dan. W. Lawler*, for respondent.

The power of the City under the charter, to establish the grades of streets is unlimited; and it may establish any grades which it deems fit and suitable for the public welfare.    Sp. Laws 1887, ch. 7, tit. 3, § 1.    The question whether the City has adopted the best method of grading or improving a street is one for the governing body of the City, and not for the courts.    2 Dillon, Mun. Corp. 686, note 1; *Roberts* v. *City of Chicago*, 26 Ill. 249; *Snyder* v. *Town of Rockport*, 6 Ind. 237; *Reynolds* v. *Mayor, etc., of Shreveport*, 13 La. Ann. 426. The authority given the City Council and engineer is ample under § 1, to establish two grades on the same street, without any liability to the property holder.    *Alden* v. *City of Minneapolis*, 24 Minn. 254; *O'Brien* v. *City of St. Paul*, 25 Minn. 331; *State* v. *District Court of Ramsey County*, 44 Minn. 244; *Kuschke* v. *City of St. Paul*, 45 Minn. 225; *Henderson* v. *City of Minneapolis*, 32 Minn. 319; *Karst* v. *St. Paul, S. & T. F. R. Co.*, 22 Minn. 118.    The retaining wall was necessary to hold the upper roadway in place; hence its construction was a part of the necessary work of grading the street.

DICKINSON, J.    The plaintiff owns several lots on the north side of Curtice street, in the city of St. Paul, the lots fronting on that street. The street is sixty feet wide.    In the year 1890, the common council of the city, by resolution, established the grade of this part of the street on two different planes; the middle line of the street being the line of division between the different grades.    The grade thus established for the north half of the street was lower than that of the south half to the extent (in different places) of from five to seventeen and a half feet in front of the plaintiff's premises.    Some distance east of the plaintiff's premises, and also to the westward, these two grades come together at a common level.

The next year (1891) the city graded the street in conformity with this established double grade; and in doing so, for the purpose of retaining the earth on the south half of the street at the higher

grade fixed for that half of the street, a retaining wall was constructed along the center of the street, the base of which is four and a half feet north of the center line of the street; reducing to that extent the practical usefulness, for the purposes of travel and of access, of that half of the street for which the lower grade was established.

The plaintiff, alleging these facts, and that he has been injured by the acts complained of, seeks by this action to recover damages This is an appeal from an order sustaining a demurrer to the complaint.

The city charter (Sp. Laws 1887, ch. 7, § 1, tit. 3, subch. 7) in unqualified terms authorizes the common council to establish the grades of streets. This general authority is not questioned by the appellant, but he contends that the grade must be continuous and unbroken from one side of the street to the other, and that this *double* grade was unauthorized. But the charter does not thus limit the power conferred, and there is nothing in the nature of the subject to warrant an inference that any such limitation was intended. On the contrary the obvious reasons rendering it expedient to commit the establishing of street grades generally to the judgment and discretion of local governing boards are of force here; and there is no apparent reason why the board, having general authority to fix such grades as the circumstances may require, should not have the power, under peculiar circumstances, to establish the grade for one side of a street on a different plane from that of the other side. While the general public utility and convenience is of primary consequence in the fixing of grades in public streets, (*O'Brien* v. *City of St. Paul,* 25 Minn. 331, 334,) yet the consequences to abutting property need not be disregarded. Let us suppose the case of a street running along the face of a steep hillside, with lots abutting on the street both on its upper and lower sides. To make the street fit for travel the roadway must be reduced to a nearly level grade either by cutting down on the upper side, or by raising the grade on the lower side, or by both such cutting and filling. But this might render the lots on one side of the street, or even on both sides, inaccessible and useless. If by making a double grade for the street, as was done in

this case, the public convenience may be subserved, and the abutting lots be made accessible from the street, there is no apparent reason why the authority of the proper public officers should be so restricted that they could not so establish the grade. We are satisfied that the general authority conferred by the charter may be exercised in this manner.

The case of the plaintiff is not based on allegations of fraud or bad faith on the part of the city council, but on a denial of the power to establish any grade in this manner. If the power exists, as we hold it does, it must be assumed to have been properly exercised. The plaintiff held his property subject to this public right, which is incident to the existence of a public easement; and if by the exercise of it his property is injuriously affected, he has no right of action therefor. *Henderson* v. *City of Minneapolis*, 32 Minn. 319, (20 N. W. Rep. 322,) and cases cited.

The building of the retaining wall in the street is to be regarded as merely incident, and, as we must presume, properly incident, to the bringing of the surface to the established grade, and of maintaining the earth in place. The propriety of such a wall to support the earth on the higher of the two grades is sufficiently apparent, and the right of the city to construct and maintain it follows as a consequence from its right to establish and construct the grade on different planes. As this was the exercise of a public right, to which the rights of the adjacent proprietor were subordinate, he cannot complain. As was considered in the *Henderson Case*, all the injury which might result to the adjacent property from the establishing of the street, including any changes in its surface or grade which public expediency might require, must be presumed to have been considered when the street was laid out or dedicated, and to have been then made the subject of compensation, unless the right of compensation was relinquished by a voluntary donation or dedication of the land for public use. If the higher of these two grades had been adopted for the whole width of the street, and a retaining wall of that height erected along its north side in front of the plaintiff's property, he would have had no cause of action therefor, as was decided in the case last cited. To build this wall in the center of the street is no

more an interference with any reserved rights of the landowner than it would be in the case supposed. Nor does it make any difference that the wall extends over on that half of the street upon which plaintiff's lots abut. The whole street was appropriated to public use, and as against the public, in the exercise of its rights within the proper scope or extent of the easement, the plaintiff's ownership of the fee upon which the wall in part rests gives him no reason for complaint. This is not a contest between adjacent proprietors.

Nor was the city bound to make the roadway of equal width on both sides of the street. The interests of the public, and not merely the convenience of the adjacent proprietors, must be presumed to have influenced the action of the city in this matter.

Order affirmed.

(Opinion published 52 N. W. Rep. 925.)

