# IN THE MATTER OF THE APPEAL OF LINTON L. SARTELL FROM THE ACTION OF THE COUNTY BOARD IN THE MATTER OF THE PETITION FOR THE ENLARGEMENT OF SCHOOL DISTRICT NO. 5.

## LINTON L. SARTELL v. COUNTY OF BENTON AND ANOTHER.[1]

June 10, 1921.

No. 22,251.

**Enlargement of school district — act of county board arbitrary.**

On appeal from the order of the county board refusing to enlarge a school district, the order being legislative and not subject to reversal unless arbitrary and without due regard to the public interests, the evidence sustains a finding of the jury, approved by the trial court, that the act of the county board was arbitrary and without due regard to public interests.

From an order of the county board of Benton county denying a petition for the enlargement of district No. 5 of Stearns county, Linton L. Sartell, treasurer of that school district, appealed to the district court for Benton county, on the grounds that best interests of the territory affected required that that portion of school district No. 3 of Benton county, situated within the municipal limits of the village of Sartell in Benton county, should be separated from school district No. 3 of Benton county and included within the boundaries of school district No. 5; that the part of district No. 3 within the village of Sartell lies about three miles from the school building maintained by district

[1]Reported in 183 N. W. 148.

No. 3 in the village of Sauk Rapids. The appeal was heard by Nye, J., who made findings and reversed the decision of the county board. From an order denying their motion for a new trial, defendants appealed. Affirmed.

*E. W. Swenson, M. J. Daly* and *Donohue & Quigley,* for appellants.
*R. B. Brower* and *J. D. Sullivan,* for respondent.

DIBELL, J.

Linton L. Sartell, treasurer of school district No. 5 in Stearns county, appealed to the district court of Benton county from an order of the county board made November 2, 1915, denying a petition for the enlargement of District No. 5 by including therein certain lands in school district No. 3 in Benton county.

The court submitted to a jury the following question which was answered as indicated: "Did the county board act arbitrarily and without due regard for the best interests of the public in refusing to grant the petition of the legal voters of district No. 5? Answer: Yes."

The defendants appeal from the order denying their motion for a new trial. The question is whether the evidence sustains the finding of the jury.

The act of the county board in enlarging a school district is legislative, and it will not be disturbed on the appeal given by statute, unless it was made upon an erroneous theory of law, or was arbitrary or in disregard of the best interests of the public. The idea has been variously phrased in different cases involving the general question. Severts v. County of Yellow Medicine, 148 Minn. 321, 181 N. W. 919, and cases cited; Independent School District No. 47 of Meeker County v. Meeker County, 143 Minn. 169, 173 N. W. 850, and cases cited; Hall v. Board of Co. Commrs. of Chippewa County, 140 Minn. 133, 167 N. W. 358; Farrell v. County of Sibley, 135 Minn. 439, 161 N. W. 152.

The village of Sartell was organized in 1907. It is on both sides of the Mississippi river. The part west of the river is in Stearns county and the part east of the river is in Benton county. West of the river the village is in school district No. 5 of Stearns county; east of the river it is in school district No. 3 of Benton county. In 1905 the Watab Pulp and Paper Company commenced the construction of its

plant on the east side of the river, in what is now a part of the village of Sartell, and the plant began operations in 1907. The people live chiefly on the west side of the river, though some are on the east side. The railroad following along the river is on the east. There is a substantial wagon and foot bridge across the river. Sauk Rapids is 2 or 3 miles south on the east side of the river. It is in district No. 3. It has a first-class high school. It maintains a bus carrying pupils to and from Sartell. The portion of Sartell within the district is about 140 acres in extent and has for years largely contributed by taxation to the support of the Sauk Rapids schools. The figures available for 1913, 1914 and 1915 indicate that it paid as much as one-third of the total taxes of the district. The taxes which it pays in district No. 5 'are nominal. The west end of its dam and perhaps a small amount of other property is taxable there. A common school taking pupils through the eighth grade is maintained in district No. 5. The district lacks money and the school is not properly equipped. From 1907 to 1915 inclusive the levy of school taxes in district No. 5 averaged 31.7 mills; in district No. 3 it averaged 16.4 mills. In 1913, 1914 and 1915 the school levy on property in the village on the east side of the river was on a taxable value of from $180,000 to $225,000. The record does not show the valuation of the portion west of the river. Taking the school levy of district No. 5 for these three years, 42, 38.9, and 36 mills, and approximating as nearly as possible the income derived, which is not definitely shown, it is clear that the taxable value of the property on the west side in the village of Sartell was but a fraction of the value on the east side.

The people in Sartell are there largely because of the Watab mill. That is the one large industry. District No. 5 is put to the support of schools for those living on the west side as most of them do. They are there because of the mill in district No. 3 and get their support from it. The schools would be efficient instead of inefficient if the district could resort to the plant for the support of the schools which its location there makes necessary. The burden of the district increases as more residents are attracted by the presence of the mill. Those who take advantage of the Sauk Rapids schools do so at much inconvenience. The bus service has not been satisfactory.

The village of Sartell is a sufficiently compact community and of sufficient size to have at least a good graded school and perhaps something more as time goes. There is every reason why the industry east of the river should contribute to the support of the schools to which it is tributary. These schools it makes necessary, if the work of the mill is to be done by residents of the village. It is a part of the community. There is much justice in the insistence of the village that the boundaries of the school district should not be such as to deprive it of the school advantages which it would have if treated as a community for school purposes. As it is, the children of the workmen in the mill are condemned to inferior schools, though the property of the community is sufficient to maintain good ones. The mill owners have recognized the justice of calling upon them for the support of the local schools, though an enlargement of the district may increase the company taxes.

The evidence sustains the finding of the jury, which has the decisively expressed sanction of the trial court, that the action of the county board was arbitrary and against the best interests of the public. We do not say that the evidence required such finding; it sustains it. What occurred at the hearing before the board was not preserved. But the board at least knew the situation. The chairman of the board was one of the remonstrants against the granting of the petition. He at least was not in a position to maintain a judicial poise in the consideration of the petition.

Complaint is made that evidence was introduced of conditions later than the time when the county board passed upon the question. All parties went far afield. When the court's attention was called to the issue, and this was when the trial was well towards an end, the evidence was restricted. So far as possible that which was objectionable, though in without objection, was stricken. We find nothing in the charge of which the defendants should complain. It went quite as far in favor of the defendants as they were entitled to ask. It is hardly necessary to say that the plaintiff was not required to prove his case beyond a reasonable doubt.

Order affirmed.